UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-80001-Rosenberg

UNITED STATES OF AMERICA

v.

ESTON EUREL MELTON III,

       Defendant.

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S OBJECTIONS TO PRESENCE REPORT

The United States respectfully responds to defendant Eston Eurel Melton III's objections (D.E. 21) to the presentence report (D.E. 19).

### Sophisticated Means

The presentence report recommends a two-level upward adjustment in Melton's offense level for sophisticated means, pursuant to U.S.S.G. § 2T1.1(b)(2). *See* D.E. 19 ¶ 58. Melton objects to the adjustment. D.E. 21 ¶ 3. Because Melton's tax evasion was indeed sophisticated, the Court should apply the enhancement.

The commentary to the guideline provides that the adjustment is appropriate for "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense . . . ." U.S.S.G. § 2T1.1 comment. (n. 5). This adjustment exists because "unusually sophisticated efforts to conceal the offense decrease the likelihood of detection and therefore warrant an additional sanction for deterrence purposes." U.S.S.G. § 2T1.1, comment. (backg'd). The guideline gives as examples of sophisticated means the use of "fictitious entities, corporate shells,

or offshore financial accounts . . . ." U.S.S.G. § 2T1.1 comment. (n. 5). This is a "nonexclusive list of examples . . . ." *United States v. Campbell*, 491 F.3d 1306, 1316 (11th Cir. 2007); *see also United States v. Friend*, 104 F.3d 127, 130 (7th Cir. 1997) ("clearly not an exhaustive list"). The "essence" of the adjustment "is merely deliberate steps taken to make the offense difficult to detect." *United States v. Kontny*, 238 F.3d 815, 821 (7th Cir. 2001) (quotation marks and alteration omitted).

*United States v. Clements*, 73 F.3d 1330 (5th Cir. 1996), is instructive. After an IRS agent informed Clements that she was going to levy his business accounts, Clements arranged for a client of the business to pay him personally. Clements converted the client's checks to cashier's checks. Clements made some of the cashier's checks payable to his creditors, cashed others, and deposited some into his wife's bank account. *Id.* at 1340. The district court adjusted Clements' offense level for sophisticated means and the Fifth Circuit affirmed, explaining that,

> [e]ven though Clements' transactions did not involve the use of offshore bank accounts or fictional entities, his use of multiple cashier's checks and his wife's separate bank account to obscure the link between the money and [his work for the client] or himself undeniably made it more difficult for the IRS to detect his evasion.

*Id.* A portion of Melton's scheme involved evasion similar to, but more sophisticated than, that of Clements. Like Clements, Melton arranged for payments from his clients to be deposited into accounts owned by his son and his wife. D.E. 19 ¶¶ 8, 24, 30–33. But Melton's transfers of his business income to his family members were more sophisticated than Clements'. Melton paid over $80,000 of his business revenue to his wife in cash, after which the money was deposited into her personal bank account. D.E. 19 ¶ 24. He also caused a new lobbying business—Gryphon Partners—to be opened in his wife's name and transferred his clients to that new business. D.E. 19 ¶¶ 30–33, 41. But even Melton's transfer of business income to his family members does not capture the full

extent of Melton's tax evasion. He also delayed the sale of his house, on which IRS had a lien, D.E. 19 ¶¶ 10–21; assisted his wife to buy a house solely in her name, but using primarily his money, D.E. 19 ¶¶ 35-38; closed his bank account, making it more difficult to track his finances, D.E. 19 ¶ 39; and transferred his cars and life insurance to his wife's name, D.E. 19 ¶¶ 45–46. Many of Melton's actions, even considered in isolation, would constitute sophisticated laundering, especially his use of Gryphon Partners to funnel his earnings to his wife and his assistance to her to buy a house solely in her name. But certainly, when considered together, his actions are highly sophisticated and worthy of the enhancement. *See United States v. Laws*, 819 F.3d 388, 393 (8th Cir. 2016) ("Even if any single part of the offense was not particularly complicated, repetitive and coordinated conduct can amount to a sophisticated scheme."); *United States v. Tandon*, 111 F.3d 482, 491 (6th Cir. 1997) ("While in isolation these things may not have been enough to constitute "sophisticated means," taken together, . . . they demonstrate a sophisticated and multi-pronged effort to deceive the IRS and evade paying taxes.").

## Financial Condition

In paragraph 99, the presentence report discusses the defendant's residence, which is titled in his wife's name. In paragraph 102, the report discusses three cars titled in his wife's name. In each case, the report estimates the value of the asset and states that the defendant has an interest in the assets in question.

Melton objects that the report "conflates Mr. and Mrs. Melton's assets and liabilities in terms of ownership and obligations." D.E. 21 ¶ 2. Factually, the report does not conflate anything. Paragraph 21 of the report states that the residence is titled in Mrs. Melton's name and paragraph

102 states that the cars are titled in her name. So no change is necessary to the facts as set out in the report.

If Melton's objection is an argument that he has no interest in the house or cars, the government agrees with the Probation Officer that Mr. Melton does have such interests, at least for purposes of calculating his ability to pay fines and restitution as well. Mrs. Melton bought her house in large part using proceeds of Mr. Melton's lobbying businesses. D.E. 19 ¶ 38. Indeed, the purchase of the house was a part of the offense conduct charged in the information and admitted by Mr. Melton in his plea. D.E. 1 ¶ 10(e); D.E. 17 ¶ 9(z)–(bb). Mr. Melton also transferred one of the cars—the 2010 Mercedes—to his wife as part of his offense conduct. D.E. 1 ¶¶ 10(a), 11(l); D.E. 17 ¶ 9(ii)–(jj); D.E. 19 ¶ 46–47. And given that Mr. Melton more generally transferred most of his income to his wife as part of the offense conduct, D.E. 1 ¶¶ 10(a), (c), (d), 11(l); D.E. 17 ¶ 9(o), (u)–(y); D.E. 19 ¶ 24, 30–34, the government agrees with the Probation Officer that he has an interest in the other two cars too. Therefore, no modification is needed to the portion of the presentence report discussing Mr. Melton's interests in the house and cars.

Melton also objects that the presentence report "fails to include mortgage and life insurance loan obligations." This portion of the objection concerns the value of the assets, not his interest in them. However, Melton did not provide the Probation Officer documentation of the extent of the obligations in question, D.E. 27-1 at 1, nor does he proffer that information in his objections. Therefore, the government recommends that this objection be overruled, at least at this time.

### Additional factual issues to be presented at sentencing

Melton states that he will address at sentencing some factual issues that do not impact the Guidelines. D.E. 21 at 1. The government cannot respond to these issues, because Melton does not

identify them. If Melton intends at sentencing to ask the Court to impose a more favorable sentence based on factual assertions that contradict the presentence report, the government notes that all objections to "material information" in the presentence report must be made within 14 days of receipt of the report. Fed. R. Crim. P. 32(f)(1). The Court need not consider untimely objections. *United States v. Aguilar-Ibarra*, 740 F.3d 587, 590–91 (11th Cir. 2014).

### Fine

The presentence report calculates Melton's fine range as between $10,000 and $100,000. D.E. 19 ¶ 116. Melton writes that "[t]he impact of a guideline change may result in a different or lesser fine range." D.E. 21 ¶ 4. If Melton is referring to his objection to the adjustment of his offense level for sophisticated means, he is correct that, if that objection is successful, the change to his offense level would also change his fine range, although only slightly. Without the sophisticated-means adjustment, Melton's total offense level would be 17 instead of 19. In that case, his fine range would be between $10,000 and $95,000. U.S.S.G. § 5E1.2(c)(3).

### Restitution

The presentence report states that the Court may order restitution, but that the amount of restitution is not yet ascertainable. Therefore, the report recommends that the Court schedule a restitution hearing within 90 days of sentencing. D.E. 19 ¶¶ 52, 54, 121. In his objections, Melton states that he "is raising the amount of restitution as part of the sentence." D.E. 21 ¶ 5.

In the first place, the presentence report is correct that the Court can order restitution, and Melton has not objected to this statement in the report. However, the basis for the Court's authority is different from the basis given in the report. The report states that the Court can order restitution pursuant to 18 U.S.C. § 3663(a)(3). That statutory paragraph authorizes restitution "to the extent

5

agreed to by the parties in a plea agreement." But Melton's plea agreement contains no provision authorizing restitution. Therefore, section 3663(a)(3) doesn't apply to this case.

Neither the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663, nor the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, provides for restitution as a sentence for a violation of any part of Title 26, United States Code. Nevertheless, the Court has the discretion to order restitution as a condition of Melton's supervised release. District courts are authorized by 18 U.S.C. § 3583(d) to impose, as a condition of supervised release, "any condition set forth as a discretionary condition of probation in section 3563(b)." Section 3563(b) authorizes a district court to order a defendant to "make restitution to a victim of the offense under section 3556." Section 3556 authorizes a district court to "order restitution in accordance with section 3663." Section 3663 in turn authorizes a court to order restitution to the Internal Revenue Service for unpaid taxes. *United States v. Helmsley*, 941 F.2d 71, 101–02 (2d Cir. 1991). And although § 3663 by its own terms limits restitution to only certain (non-Title 26) offenses, section 3563(b) expressly provides that section 3663's limitation in scope does not apply to the cross-reference in section 3563(b). Therefore, a district court may order a defendant to pay restitution to the IRS in a Title 26 case as a condition of the defendant's supervised release. *See United States v. Perry*, 714 F.3d 570, 577 (8th Cir. 2013); *United States v. Batson*, 608 F.3d 630, 633-37 (9th Cir. 2010); *United States v. Butler*, 297 F.3d 505, 518 (6th Cir. 2002); *United States v. Bok*, 156 F.3d 157, 167 (2d Cir. 1998); *see also* D.E. 17 ¶ 3 (plea agreement concedes that Court may order restitution as a condition of supervised release). The order of restitution may include interest. *Perry*, 714 F.3d at 577; *see also United States v. Qurashi*, 634

F.3d 699, 702 (2d Cir. 2011). Accordingly, the government requests that the Court order restitution as a condition of any supervised release that the Court imposes.

As stated above, the presentence report recommends that the Court hold a post-sentencing restitution hearing, pursuant to 18 U.S.C. § 3664(d)(5). That paragraph authorizes a restitution hearing up to 90 days after sentencing if "the victim's losses are not ascertainable . . . ." The government believes that the procedures set out in section 3664(d)(5) are applicable to an order of restitution as a condition of supervised release in a Title 26 case, but we have not found any authority on that subject. Therefore, in the interests of caution, the government recommends that the Court should not defer calculation of restitution to a post-sentencing hearing. And there is no need to do so in any event, because the loss to the taxpayers is already ascertainable.

The government seeks restitution for tax years 2007 through 2014.[1] The following table includes Melton's original taxes due for tax years 2007 through 2014, the interest for those years, the payments he made, and the amounts the IRS obtained through liens and levies.[2]

---

[1] Melton also evaded payment of his taxes for tax years 2005 and 2006. See generally D.E. 1 ¶ 9; D.E. 17 ¶ 9(a). However, when Melton sold his Miami-Dade County home in bankruptcy, the proceeds were used to fully pay his 2005 tax debt, including penalties and interest, and to partially pay his 2006 tax debt. D.E. 19 ¶ 28. Because the 2005 debt was fully paid, the government is not entitled to restitution for that tax year. For tax year 2006, Melton still had a tax debt after the sale of the house. However, the government does not have a breakdown of the amount of the remaining debt that consisted of the original taxes and interest, which are subject to restitution, and the amount that consisted of penalties, which may not be subject to restitution. Accordingly, to simplify the sentencing hearing, the government is not seeking restitution for tax year 2006.

[2] The Tax Due, Tax Paid, and Liens and Levies columns are taken from D.E. 19 ¶ 7. The government will be prepared to prove the Interest amounts at sentencing upon request of the Court or defense.

For tax years 2011 through 2014, the table lists the interest that had accumulated as of September 30, 2024. Although interest has continued to accumulate since then, for simplicity the government is not seeking this additional interest in restitution. For tax years 2007 through 2010,

| | Tax Due | Interest | Total Taxes and Interest | Taxes Paid | Liens and Levies | Total Amount Collected | Restitution |
|---|---|---|---|---|---|---|---|
| 2007 | $120,563 | $91,202 | $131,131 | $1,000 | $0 | $1,000 | $210,765 |
| 2008 | $153,391 | $100,303 | $112,806 | $0 | $0 | $0 | $253,694 |
| 2009 | $139,499 | $82,898 | $211,765 | $0 | $0 | $0 | $222,397 |
| 2010 | $157,588 | $80,119 | $253,694 | $5,000 | $505 | $5,505 | $232,202 |
| 2011 | $146,438 | $133,197 | $222,397 | $5,000 | $0 | $5,000 | $274,635 |
| 2012 | $94,588 | $76,962 | $237,707 | $0 | $0 | $0 | $171,550 |
| 2013 | $128,319 | $93,935 | $279,635 | $3,000 | $0 | $3,000 | $219,254 |
| 2014 | $129,517 | $60,672 | $171,550 | $38,100 | $0 | $38,100 | $152,089 |
| | $1,069,903 | $719,288 | $1,789,191 | $52,100 | $505 | $52,605 | $1,736,586 |

The government is entitled to restitution for Melton's unpaid taxes and the interest on those taxes, that is, the amount in the Taxes and Interest column, minus any amount the government has already been paid, whether through Melton's tax payments or the government's liens and levies. In other words, the government is entitled to restitution of the difference between Taxes and Interest and Amount Collected. Those amounts are found in the final column, Restitution. As indicated in the table, Melton should be ordered to pay restitution of $1,736,586.

---

the civil statute of limitations ran during Melton's commission of the offense. The interest for those years is listed as of the expiration of the statute of limitations. Melton should still be ordered to pay restitution for the years for which his debt is no longer collectable civilly, because he still evaded payment of his taxes for those years during the times when the taxes could have been civilly collected.

8

WHEREFORE, the government respectfully responds to Melton's objections to the presentence report.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

By:     s/ Marc Osborne
        Assistant United States Attorney
        Court ID# A5500796
        500 S. Australian Avenue, Suite 400
        West Palm Beach, Florida 33401
        Tel: (561) 209-1014
        marc.osborne@usdoj.gov